**Richard DOE, Guardian and Next Friend of John Doe, A Minor**

v.

**BRITISH UNIVERSITIES NORTH AMERICAN CLUB; Bunac Travel Services, Limited; Bunac U.S.A., Inc.; Long Rivers Council, Inc.; and the Boy Scouts of America, Inc.**

Civ. No. H–90–657 (AHN).

United States District Court, D. Connecticut.

April 7, 1992.

---

**20.** The judgment here should have no preclusive effect in the Superior Court action.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

Richard Doe, in his capacity as guardian and next friend of John Doe, a minor, (hereafter collectively referred to as "Doe") brings this diversity action against British Universities North America Club ("BUNAC"), BUNAC Travel Services, Limited ("BTS"), BUNAC U.S.A., Long Rivers Council, Inc. ("LRC"), and the Boy Scouts of America ("BSA"). The action arises from an incident on August 16, 1989 in which John Doe was allegedly sexually assaulted by a camp counselor, Mark Drummond ("Drummond"), at Camp Workcoeman, a summer camp operated by LRC and BSA. The six count complaint alleges: (1) all defendants negligently hired Drummond as a counselor; (2) BSA and LRC negligently supervised Drummond; (3) all defendants are liable for Drummond's conduct under the doctrine of *respondeat superior;* (4) the negligent infliction of emotional distress by all defendants; (5) the conduct of all defendants was malicious; and (6) all defendants violated the Connecticut Unfair Trade Practices Act ("CUTPA"). BUNAC, BTS, and BUNAC USA (hereinafter collectively referred to as the "BUNAC defendants") file a joint motion for summary judgment on all counts. LRC and BSA (hereinafter collectively referred to as the "Boy Scouts") file a separate joint motion for summary judgment on all counts. Doe oppose both motions. For the reasons below, the court grants the BUNAC defendants' motion for summary judgment and denies the Boy Scouts' motion for summary judgment.

### The Facts

The court finds the following facts undisputed:

1. BUNAC is legal entity, owned and operated in the United Kingdom as a student membership club. BTS is a wholly owned British service company of BUNAC. BUNAC, USA is a wholly owned service company in the United States. (Buck Aff. ¶ 3.)

Douglas B. Thayer, Wieselman, Horowitz & Thayer, Hartford, Conn., for plaintiff.

Edward J. Daly, Jr., Hartford, Conn., Gerald S. Sack, Thomas P. Barrett, Sack, Spector & Barrett, West Hartford, Conn., for defendants.

2. BSA is a non-profit corporation chartered by Congress in 1916, *see* 36 U.S.C. § 21, et seq., with its principal office in Irving, Texas.

3. LRC is a local council chartered by BSA.

4. Pursuant to an agreement with LRC, BUNAC screens, interviews, and places job applicants who wish to work as camp counselors in the United States. BUNAC only provides placement services to applicants who are members of its organization. (*See* Seiser Dep. at 64–76; Liberis Dep. at 128; Buck Dep. at 63; Pltf.'s Mem.Opp.Ex.D.)

5. LRC manages a scout camp facility in Connecticut called Camp Workcoeman (the "Camp"). (*See* Pltf.'s Mem.Opp.Ex.F; Buck Aff. ¶ 9.)

6. Drummond is a citizen of the United Kingdom. In January of 1987, Drummond filed an application with BUNAC to be a camp counselor in the United States. Between January and February, 1987, BUNAC processed the application, interviewed Drummond, and recommended him for hire by a summer camp in the United States. (Buck Aff. ¶¶ 5–7.)

7. On March 24, 1987, LRC notified BUNAC that Drummond had been accepted as a camp counselor at Camp Workcoeman. (Buck Aff. ¶ 8.)

8. Following Drummond's initial acceptance, BUNAC arranged transportation and a VISA for Drummond for the years that Drummond worked at the Camp, including 1988 and 1989. In return, Drummond paid BUNAC a fee deducted from his salary to cover these costs. In 1989 that fee was 610.00. In addition, BUNAC sent representatives each summer to the Camp to make a one time check on Drummond's status. (Pltf.'s Mem.Opp.Ex.D; Buck Dep. at 82–83.)

9. Drummond received an outstanding performance evaluation at the end of the summer of 1987, and was invited back for the following summer of 1988. (Buck Aff. ¶¶ 10–14.)

10. Drummond negotiated and entered into a contract directly with LRC and the Camp for 1988. (*Id.; see also* Def. BUNAC's Mem.Supp.Ex.D.)

11. Once again, Drummond received outstanding reviews from the Camp's staff, parents, and the counselors and was invited back for the summer of 1989. (Buck Aff. ¶ 12; *see also* Def. BUNAC's Mem.Supp. Ex. F, G, H.)

12. Drummond and the Camp entered into another contract for the summer of 1989. Again, the contract was directly between Drummond and the LRC. (Def. BUNAC's Mem.Supp.Ex.H.)

13. On or about August 16, 1989 at approximately 8:00 p.m., Drummond engaged in sexual conduct with John Doe, a fourteen year old camper at the Camp. (*See* Pltf.'s Mem.Opp.Ex.M, N.)

14. Throughout his employment as a counselor at the Camp, Drummond was directly supervised and evaluated by Mr. Louis Seiser ("Seiser"), the Director of the Camp. (Def. BUNAC's Mem.Supp.Ex.F.)

### Discussion

In a motion for summary judgment, the moving party bears the burden of establishing that no genuine issues of material fact are in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All factual inferences are drawn in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989). Applying these rules, the court finds that the BUNAC defendants are entitled to summary judgment on all counts. Conversely, the court finds that summary judgment is inappropriate with respect to the Boy Scouts.

## A. The BUNAC Defendants

The BUNAC defendants contend that they are entitled to summary judgment on several grounds. First, they argue that BUNAC did not owe Doe a legally cognizable duty and, thus, cannot incur liability for any claim predicated on negligence. Second, the BUNAC defendants assert that Doe cannot establish causation, as a matter of law, between any alleged negligence on the part of BUNAC and the injuries suffered by John Doe as a result of Drummond's conduct. Third, the BUNAC defendants contend that Doe's CUTPA claim is barred by the applicable statute of limitations and that the conduct complained of falls outside the scope of the CUTPA statute.[1] The court agrees.

### 1. BUNAC's Legal Duty

Negligence is often defined as " 'a breach of duty.' " *Shore v. Stonington,* 187 Conn. 147, 151, 444 A.2d 1379 (1982). It is axiomatic, therefore, that "[w]here there is no legal duty, there can be no actionable negligence." *Frankovitch v. Burton,* 185 Conn. 14, 20, 440 A.2d 254 (1981). " 'Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence.' " *Burton,* 185 Conn at 20, 440 A.2d 254, quoting *Neal v. Shiels, Inc.,* 166

Conn. 3, 12, 347 A.2d 102 (1974); *see also McDowell v. Federal Tea Co.,* 128 Conn. 437, 440, 23 A.2d 512 (1941).

■ In considering a claim of negligence, courts distinguish between the existence of a legal duty and the actual violation of that duty by the defendant. *Shore,* 187 Conn. at 151, 444 A.2d 1379. The former is "a question of law" to be decided by the court. *Id.,* citing *Nolan v. New York, N.H. & H. R.R.,* 53 Conn. 461, 471, 4 A. 106 (1885). The latter, is an issue of fact, to be decided by the trier of fact "[o]nly if such a duty is found to exist ..." by the court. *Id.* Accordingly, whether BUNAC owed Doe a duty of care in this case is a matter of law properly determined on a motion summary judgment.

BUNAC's role in this action is best analogized to that of an employment agency. BUNAC, pursuant to an agreement with LRC, screens, interviews, and places members of its organization who wish to work as camp counselors in the United States. (*See* Seiser Dep. at 64–76; Liberis Dep. at 128; Buck Dep. at 63; Pltf.'s Mem. Opp. Ex. D.) BUNAC interviewed Drummond and recommended him for hire in 1987. (Buck Aff. ¶¶ 7–8; Def. BUNAC's Mem. Supp. Ex. A, B, C.) Once BUNAC recommended Drummond, LRC and Drummond negotiated an employment contract direct-

---

**1.** The BUNAC defendants also contend that all of Doe's negligence claims set forth in counts one, three, four, and five of the complaint are barred by the applicable Connecticut statute of limitations in negligence actions which bars any action to recover damages "brought more than three years from the date of the act or omission complained of ..." Conn.Gen.Stat. § 52–584. The court agrees with BUNAC's assessment that the statute runs from the date that the negligent conduct occurred and not the date of the injury sustained by the plaintiff. *Stein v. Katz,* 213 Conn. 282, 285, 567 A.2d 1183 (1989); *Vilcinskas v. Sears, Roebuck & Co.,* 144 Conn. 170, 173, 127 A.2d 814 (1956); *see also Drakatos v. R.B. Denison, Inc.,* 493 F.Supp. 942, 944 n. 1 (D.Conn. 1980). Accordingly, the statute of limitations would appear to be fatal to all of Doe's negligence claims against the BUNAC defendants since the negligence complained of, negligent hiring and screening of Drummond, occurred in February of 1987 and Doe filed the action more that three years later in August of 1990.

Doe, however, contends that because this is an action for damages to a minor caused by sexual abuse, Conn.Gen.Stat. § 52–577d with its seven year statute of limitation governs this case. Although the court shares BUNAC's concern that C.G.S. § 52–577d appears to apply only in cases where the civil action is directly against the perpetrator of the sexual misconduct, usually a parent or close family relation, the parties were unable to provide and the court was unable to find any dispositive authority on the scope of § 52–577d.

Because the other grounds offered by the BUNAC defendants in support of their motion for summary judgment support the court's granting of that motion, the court need not decide this first impression issue of Connecticut law. The court feels, moreover, that it would be more appropriate to leave it for Connecticut courts to decide, if necessary, in the future. Accordingly, the court offers no opinion on the merits of the BUNAC defendants' statute of limitations claim as it applies to the negligence counts in this action.

ly. (Buck Aff. ¶ 8; Pltf.'s Mem. Opp. Ex. F.) Thus, after Drummond's initial placement with LRC at the Camp, BUNAC's contact with Drummond was limited to arranging a visa, transportation, and checking with the Camp during the course of the summer to be certain there were no problems. (*See* Buck Dep. at 82–84; Pltf.'s Mem. Opp. Ex. D.)

■ Once Drummond entered into the contract with LRC, he became their employee not BUNAC's. Drummond was paid, supervised, and evaluated by LRC. (*See* Pltf.'s Mem. Opp. Ex. D, F; Def. BU-NAC's Mem. Supp. Ex. D, E; Buck Aff. ¶¶ 10–14.) Conversely, there is no evidence to support the claim that BUNAC hired Drummond or that Drummond was BU-NAC's employee. (*Cf.* Pltf.'s Mem. Opp. Ex. D, F.) At best, BUNAC worked for Drummond, attempting to place him with a summer camp in the United States and assisting him with his travel and immigration. The court, therefore, considers Doe's claim that BUNAC owed Doe a duty of care in the context of BUNAC's role as a placement agency for counselors.

In the absence of any direct Connecticut law on the issue, the court turns to *Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135 (3rd Cir.1985). *Gutzan* addresses the scope and nature of the duty owed by an employment agency for the criminal conduct of a person referred by that agency for hire. In *Gutzan*, an employment agency referred a person with a previous criminal conviction for raping a co-worker while in the military. The employer hired the person. Less than one year after being hired, the person raped a fellow-employee. The victim sued not only the employer but the employment agency for failure to protect employees. The *Gutzan* court reversed a trial court's ruling that as a matter of law the duty to protect employees had shifted entirely from the employment agency to the employer. *Gutzan*, 766 F.2d at 141. The court reasoned that the employer's decision to hire the perpetrator was based on the "unreasonable assumption [by the employer] that he posed no danger to his fellow workers." *Id.* The court, however, found

that the employer's negligence did not relieve the employment agency of liability because the employer's assumptions were based in part on the employment agency's assurance that the perpetrator "was 'not really a rapist.'" *Id.* The court, moreover, found that the degree of harm and magnitude of risk to the victim posed by the employment agency's omission was significant because the agency knew *prior* to referring the perpetrator that he had been convicted of raping a female co-worker and because the agency *had reason to believe that the employer was unaware* of the circumstances or risks posed by the perpetrator's *prior* criminal history. *Id.* In light of these circumstances, the *Gutzan* court held that the employment agency "had not as a matter of law shed itself of all responsibility for the plaintiff's freedom from harm from [the perpetrator] at the time she was raped." *Id.*

Here, there is no evidence that BUNAC had any prior knowledge of deviance on the part of Drummond. Drummond had no prior criminal record and neither party has discovered any evidence that Drummond was predisposed to the type of deviant conduct that occurred in this case. (*See* Seiser Dep. at 57–61; Pltf.'s Mem. Opp. Ex. B, C; Def. Mem. Supp. Ex. C, D, F; Buck Aff. ¶¶ 7–14.) Indeed, even the United States Embassy in London performed a background check on Drummond that revealed no prior criminal history or deviant conduct sufficient to deny Drummond a visa to work in the United States. (Buck Aff. ¶¶ 5, 9.) Drummond, moreover, received outstanding evaluations during his first two seasons at the Camp. (Buck Aff. ¶¶ 10–14.) He was rehired twice by LRC based solely upon their evaluations and worked at the Camp for almost three complete seasons without incident.

At best, BUNAC failed to discover that Drummond was a homosexual in screening his initial application. Admittedly, the failure to discover Drummond's sexual orientation could have affected the Boy Scouts' decision to hire him or renew his contract. (*See* Liberis Dep. at 128.) Such a failure, however, is not the sort of omission that creates a risk of harm of sexual assault or

molestation sufficient to confer liability under *Gutzan*. Rather, *Gutzan* requires that BUNAC's omission involve a failure to discover criminal history or some other form of tangible information that the employee was predisposed toward the misconduct in issue, a requirement that is notably absent in this case. *Cf. Gutzan*, 766 F.2d at 141.

Doe contends that judged against the standard for determining the existence of a duty under Connecticut law, BUNAC fails to meet its burden of showing that no duty exists as a matter of law. Specifically, Doe contends that the harm that came to John Doe was a foreseeable result of BUNAC's failure to properly screen Drummond's sexual orientation. Doe argues that BUNAC should have known that Drummond was a homosexual and that it was likely that Drummond would practice homosexuality in the all-male environment of Camp Workcoeman. Doe concludes that in light of what BUNAC knew or should have known about Drummond's sexual orientation and the possibility that Drummond would practice homosexuality at the Camp, BUNAC should have anticipated the risk of the type of harm suffered by John Doe and, thus, a clear duty was owed to Doe by BUNAC. The court disagrees.

Under Connecticut law, the " 'ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised.' " *Burton*, 185 Conn. at 21, 440 A.2d 254, quoting *Connecticut Savings Bank v. First National Bank & Trust Co.*, 138 Conn. 298, 303–304, 84 A.2d 267 (1951). " '[T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' " *Id.*

■ Applying this standard to BUNAC's alleged conduct, Doe fails to provide the court with any legally viable basis to find that BUNAC owed a duty to Doe. Doe does not allege that Drummond was an applicant with a documented or even discoverable history of child molestation or sexual deviancy. Rather, the crux of Doe's claim is that because Drummond admits to being a homosexual, BUNAC should or could have anticipated that he would molest male campers while working at the Camp. Assuming that BUNAC should or could have discovered the full scope of Drummond's homosexuality, an assumption adopted only for the purposes of considering the sufficiency of BUNAC's motion for summary judgment, Drummond's molestation of John Doe cannot be characterized as a foreseeable consequence of Drummond's sexual orientation even under the most liberal reading of Doe's claim. Drummond had no prior criminal record or history of sexual misconduct. (*See* Buck Aff, ¶¶ 5, 9.) Doe, moreover, offers not one scintilla of credible evidence to suggest that homosexuals pose a greater risk of committing sexual molestation, assault, or criminal conduct than heterosexuals in a summer camp environment.

Absent any tangible evidence of Drummond's predisposition toward deviant sexual conduct, it is impossible to see how the "ordinary person" in BUNAC's position could have anticipated the harm that Drummond caused John Doe. While the sexual molestation of campers by counselors is always a possibility, moreover, there is no justifiable reason for BUNAC to anticipate that Drummond was more of a risk to campers than any other Camp employee even if it had known about Drummond's homosexual orientation. To find otherwise would be to hold that homosexuals are predisposed towards molesting or sexually assaulting minor males simply by virtue of their sexual orientation. The court cannot and will not adopt such a position absent sufficient evidentiary support.[2] According-

---

**2.** At oral argument, Doe relied heavily upon the evidence that the Boy Scouts have an express policy against hiring homosexuals. (*See* Liberis Dep. at 128.) In addition, Doe points to BUNAC's manual instructing interviewers to screen closely for homosexual applicants, and not to recommend such applicants for hire. (*See*

Pltf.'s Mem. Opp. Ex. K at 6.) Doe contends that this evidence suggests that at least BUNAC and the Boy Scouts share Doe's view that homosexuals pose an unacceptable risk of harm to campers similar to the harm suffered by John Doe and that both BUNAC and the Boy Scouts were aware of the general risk that homosexual

ly, the court finds that no legally cognizable duty exists upon which to predicate a negligence claim against BUNAC.

2. Proximate Cause

■ In addition to the existence of a duty, proximate cause is another element of negligence that BUNAC argues Doe has failed to establish in his claims against BUNAC. *See Doe v. Manheimer,* 212 Conn. 748, 757, 563 A.2d 699 (1989). BUNAC contends that Drummond's deviant conduct constitutes a superseding, intervening cause of John Doe's injuries and, thus, breaks any causal link between BUNAC's alleged negligent failure to screen and the injury to John Doe. The court agrees.

Connecticut law defines proximate cause as " '[a]n actual cause that is a substantial factor in the resulting harm....' " *Manheimer,* 212 Conn. at 757, 563 A.2d 699, quoting *Boehm v. Kish,* 201 Conn. 385, 391, 517 A.2d 624 (1986); *see also Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 383, 441 A.2d 620 (1982). Like the inquiry into the existence of a legal duty, the "inquiry fundamental to all proximate cause questions ... [is] 'whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' " *Manheimer,* 212 Conn. at 758, 563 A.2d 699, quoting *Coburn,* 186 Conn. at 384, 441 A.2d 620; *see also Merhi v. Becker,* 164 Conn. 516, 521, 325 A.2d 270 (1973); *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 354, 162 N.E. 99 (1928). Generally, " '[c]onclusions of proximate cause are to be drawn by the jury and not by the court.' " *Manheimer,* 212 Conn. at 757,

563 A.2d 699, quoting *Fox v. Mason,* 189 Conn. 484, 489, 456 A.2d 1196 (1983). Proximate cause, however, becomes an issue of law for the court in cases, such as this one, where " 'the mind of a fair and reasonable man could reach only one conclusion ...' " *Manheimer,* 212 Conn. at 757, 563 A.2d 699, quoting *Trzcinski v. Richey,* 190 Conn. 285, 295, 460 A.2d 1269 (1983).

The foreseeable risk analysis to determine proximate cause "applies where, as here, the risk of harm created by the defendant's negligence extends to an intervening criminal act by a third party." *Manheimer,* 212 Conn. at 759, 563 A.2d 699; *see also Tetro v. Stratford,* 189 Conn. 601, 605, 458 A.2d 5 (1983). Connecticut adheres to the view that:

a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, *except* where the harm is intentionally caused by the third person *and* is not within the scope of the risk created by the defendant's conduct.

*Manheimer,* 212 Conn. at 759, 563 A.2d 699 (emphasis original); *see also Kiniry v. Danbury Hospital,* 183 Conn. 448, 455, 439 A.2d 408 (1981); *Burns v. Gleason Plant Sec., Inc.,* 10 Conn.App. 480, 484, 523 A.2d 940 (1987). Here, the parties do not dispute that Drummond's conduct was intentional. Thus, the issue before the court is, as it was in determining the existence of a legal duty, whether the harm caused by Drummond's conduct is within the scope of risk created by BUNAC's negligent failure

counselors pose to campers. In light of this evidence, Doe concludes that the issue of whether BUNAC should have anticipated the harm caused by its failure to adequately screen Drummond about his sexual orientation is, at the very least, an issue for the trier of fact to decide at trial. The court disagrees.

The policy of BUNAC and the Boy Scouts towards the employment of homosexual counselors reflects those institutions beliefs about the importance of the sexual orientation of their counselors. It appears to the court, however, that the importance of an applicant's sexual orientation attaches not because of the risk of molestation posed by counselors to campers but

because of the values and beliefs that the Boy Scouts have about sexual orientation in general. To the extent that the counselors carry out the day to day mission of the Boy Scouts, those counselors provide a significant means by which the Boy Scouts communicate their values and beliefs, including those about sexual preference, to their members and campers. The court, therefore, does not share Doe's position that the affirmation of sexual orientation values and beliefs implicit in the hiring process rises to the level of evidentiary support required to establish a foreseeable risk of harm and, thus, a legal duty under Connecticut law.

to investigate Drummond's background and discover that Drummond had homosexual tendencies.

Because Connecticut case law has yet to apply the scope of risk analysis to a theory of negligence such as the one set forth in this case, the court turns to *Manheimer*, a Connecticut Supreme Court ruling that discusses in detail the application of the scope of risk analysis to a variety of negligence theories. *Manheimer* rejected a plaintiff's claim that the negligent failure to cut back vegetation on a lot owned by the defendant provided an "opportunity" for a third party rapist to victimize the plaintiff and, thus, was a proximate cause of injuries suffered by the plaintiff at the hands of the third party assailant. In rejecting plaintiff's claim of liability, *Manheimer* reasoned that "[t]his theory ascribes far too much speculative imagination to a 'reasonable' or 'prudent' person." *Id.* 212 Conn. at 762, 563 A.2d 699.

*Manheimer* is of particular significance to the court in evaluating Doe's negligence claim not simply because of its holding but because the *Manheimer* Court's "conclusion is supported by many cases in which . . . [that Court] declined to hold that the defendant's conduct in contributing to the harm, principally caused "in fact" by another person or force, was a 'proximate cause' of the harm." *Id.* at 765, 563 A.2d 699. *See e.g., Cardona v. Valentin*, 160 Conn. 18, 20–21, 273 A.2d 697 (1970) (owner of pool hall's negligent failure to provide adequate security not the proximate cause of death of patron killed in a fight at pool hall with brother of a pool hall employee); *Nolan v. Morelli*, 154 Conn. 432, 436–437, 226 A.2d 383 (1967) (and cases affirming) (no tort action lay against seller of liquor for harm caused by intoxicated third party because proximate cause of intoxication was consumption of liquor by third party rather than sale by seller); *Robinson v. Southern New England Telephone Co.*, 140 Conn. 414, 418, 101 A.2d 491 (1953) (telephone company operator's negligence in placing fire call to remote rather than nearby fire station not proximate cause of extent of fire damage); *Vastola v. Connecticut Protective System, Inc.*, 133

Conn. 18, 21, 47 A.2d 844 (1946) (nonactivation of burglar alarm installed by defendant at plaintiff's premises held not to be proximate cause of burglary at those premises); *cf. Miranti v. Brookside Shopping Center, Inc.*, 159 Conn. 24, 28, 266 A.2d 370 (1969). These cases, although not factually dispositive of the foreseeability issue in this case, establish the bench mark by which claims like the one that Doe makes against BUNAC are evaluated: liability against BUNAC "requires a [showing of a] fairly strong degree of certainty that a criminal or intentional intervening act is within the 'scope of risk' of a negligent actors conduct." *Manheimer*, 212 Conn. at 767, 563 A.2d 699.

Judged against this standard, Doe fails to make the required showing of certainty. For the reasons stated in the court's previous discussion on legal duty, Doe provides no evidence to support the claim that BUNAC could have anticipated the harm caused to John Doe simply by virtue of its failure to discover Drummond's homosexual tendencies. Doe's theory that sexual orientation is a factor in anticipating sexual assaults at summer camps "ascribes far too much speculative imagination to a 'reasonable' or 'prudent' person." *Id.* at 762, 563 A.2d 699. BUNAC is simply "not required to be accomplished at making such recondite associations." *Id.*

Doe contends that *Manheimer* and the cases discussed therein are distinguishable. Doe argues that *Manheimer* involved the liability of a landowner not a placement agency. Doe contends that *Manheimer* "would be truly analogous to this case only if the landowner there had not only allowed the vegetation to grow, but also had solicited, screened, interviewed, hired, and placed the would-be rapist in the field . . ." (Pltf.'s Mem. Opp. at 27). Doe asserts that by placing a homosexual in the all-male, live in environment of the Camp, it was foreseeable that harm of the general nature suffered by John Doe could occur. The court disagrees.

First, Doe's attempt to analogize this case to *Manheimer* by characterizing BUNAC's conduct as interviewing, hiring, and

placing a rapist at the Camp is flawed. At the time that BUNAC recommended Drummond for hire, there was no evidence, criminal or otherwise, of sexual misconduct in Doe's background. (Buck Aff. ¶¶ 5, 9). The conduct complained of occurred more than three years after BUNAC recommended Drummond for hire. The Boy Scouts, not BUNAC, hired Drummond and renewed his contract two additional times following superlative evaluations of his performance in prior years. (*Id.* ¶¶ 8–14.) The Boy Scouts, not the BUNAC defendants, moreover, observed Drummond's behavior on a daily basis during his three year tenure at the Camp. (*Id.*) Indeed, it was only the Boy Scouts, by virtue of this employment relationship with Drummond, who could possibly be in a position to discover any indications of Drummond's deviancy prior to the incident with John Doe. It does not follow, therefore, that because BUNAC failed to discover Drummond's homosexual tendencies during the initial placement process in 1987, BUNAC is legally responsible for interviewing, screening, hiring, and placing a "rapist" at the Camp.

Second, Doe's premise that the " 'sociochemistry' " of placing of a person with Drummond's sexual orientation created a foreseeable " 'opportunity' " for the molestation expressly contradicts the reasoning of the *Manheimer* Court. *Manheimer*, rejected a similar argument that defendant's negligence "in connection with the 'sociochemistry' of the area created a foreseeable 'opportunity' for the commission of a violent crime and, hence, the harm inflicted on the plaintiff was within the 'scope of the risk.' " *Id.* 212 Conn. at 764, 563 A.2d 699. *Manheimer* makes "clear, that to be within the 'scope of risk,' the harm actually suffered must be of the same 'general type' as that which makes defendant's conduct negligent in the first instance." *Id.* Here, the negligence complained of was the failure to discover the homosexual orientation of a counselor placed at an all male summer camp. Doe, however, does not complain that the mere exposure to or non-criminal interaction with a person who revealed himself to be gay caused harm to John Doe, a

minor. Rather, the injury complained of is Drummond's intentional and sexual molestation of John Doe. Thus, Doe asks the court to extend the scope of foreseeable risk created by a counselor's homosexual orientation to include the risk of sexual assault or molestation, a harm that goes far beyond mere contact or interaction with a gay counselor. Because neither case law nor the evidentiary record in this case support such an extension, the court declines to adopt Doe's expansive characterization of the risk posed to male campers by gay counselors.

Finally, Doe fails to provide a single case from any jurisdiction that allays the court's concern with Doe's novel concept of proximate cause. *See e.g., Burns,* 10 Conn.App. at 486, 523 A.2d 940 (defendant's negligent failure to remove key from ignition of car did not create foreseeable risk that car would be stolen and used in an assault of plaintiff and robbery of his store); *Parker v. D/U Third Realty Co.,* 141 A.D.2d 301, 530 N.Y.S.2d 137 (1988) (where decedent taken from street to defendant's parking lot and murdered, no liability where connection between decedent and defendant's premises independent of crime itself). Conversely, the majority view in other jurisdictions suggests actual notice of the particular risk is required to establish proximate cause between the negligence of a defendant and the harm inflicted by the intentional conduct of a third party. *See e.g., Gutzan,* 766 F.2d at 141 (employment agency referral of prospective employee with a prior rape conviction created foreseeable risk since agency had prior, actual information about conviction); *Copithorne v. Framingham Union Hosp.,* 401 Mass. 860, 520 N.E.2d 139 (1988) (whether hospital's negligence was proximate cause in drugging and raping of plaintiff by doctor is an issue of fact where hospital had prior, actual notice of the physician's past, sexual misconduct); *Phillips v. Chicago Housing Authority,* 91 Ill.App.3d 544, 47 Ill.Dec. 17, 414 N.E.2d 1133 (1980) (question of fact as to whether defendant's negligent sealing of a vacant floor in area where frequent rapes occurred was proximate cause of subse-

quent rape and murder of tenant on that floor), *aff'd,* 89 Ill.2d 122, 59 Ill.Dec. 281, 431 N.E.2d 1038 (1982). Accordingly, the case law in Connecticut and other jurisdictions provides further confirmation of the court's fear that to hold BUNAC liable for Drummond's conduct "would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight." *Burns,* 10 Conn.App. at 486, 523 A.2d 940.

#### 3. Respondeat Superior

 In count three, Doe alleges that BUNAC is liable for Drummond's actions under the doctrine of *respondeat superior.* The doctrine of *respondeat superior* allows a person to recover against an employer for the tortious conduct of its employees. *See A–G Foods, Inc. v. Pepperidge Farm, Inc.,* 216 Conn. 200, 208–210, 579 A.2d 69 (1990); *Pelletier v. Bilbiles,* 154 Conn. 544, 547–548, 227 A.2d 251 (1967); *Stulginski v. Cizauskas,* 125 Conn. 293, 296, 5 A.2d 10 (1939). Under Connecticut law, an employer is liable for the wilful torts of his employees committed within the scope of the employee's employment and in furtherance of his employer's business. *A–G Foods, Inc.,* 216 Conn. at 208, 579 A.2d 69; *Pelletier,* 154 Conn. at 547, 227 A.2d 251. Obviously, a prerequisite to establishing liability under the doctrine of *respondeat superior* is the existence of an employment or master-servant relationship between the defendant and the third party who commits the tort. *See Prosser And Keeton On The Law Of Torts* § 70 (5th ed. 1984).

"Whether an individual is a servant or occupies some other relationship ... is ordinarily a question of fact." *See Electrolux Corp. v. Danaher,* 128 Conn. 342, 348, 23 A.2d 135 (1941). The fundamental inquiry is " '[in whose business was the servant engaged.' " *Tierney v. Correia,* 120 Conn. 140, 146, 180 A. 282 (1935), quoting *Braxton v. Mendelson,* 233 N.Y. 122, 124, 135 N.E. 198 (1922). Although no one particular fact is determinative, courts look to the payment of wages, right to hire and fire, and the right to supervise and direct the employee where to go and what to do. *See Tierney,* 120 Conn. at 146, 180 A. 282;

*see also Cottam v. First Baptist Church of Boulder,* 756 F.Supp. 1433, 1438 (D.Colo. 1991).

 Here, the evidentiary record does not support the existence of an employment relationship between BUNAC and Drummond. BUNAC is a membership organization that screens and places it members with summer camps in the United States. (Pltf.'s Mem. Opp. Ex. D, O; Buck Aff. ¶¶ 3–4; Buck Dep. at 64.) BUNAC assisted Drummond, one of its members, with finding employment at Camp Workcoeman. Once LRC had decided to hire Drummond, BUNAC's role was relegated to assisting him with transportation, visa, and any logistical problems that occurred while Drummond was employed by LRC. (*See* Buck Dep. at 82–84, 87–100.) Drummond negotiated employment contracts directly with LRC. (*See* Buck Aff. ¶¶ 8, 10–14; Def. BUNAC's Mem. Supp. Ex. H; Pltf.'s Mem. Opp. Ex. D.) Drummond was entirely under the control of LRC who both supervised and evaluated his work as a counselor. Drummond received his entire counselor's salary from LRC not BUNAC. (*Id.*) Conversely, Drummond paid BUNAC for its assistance in arranging his travel and visa, suggesting that BUNAC was Drummond's agent rather than vice-versa. (Def. BUNAC's Mem. Supp. Ex. H; Pltf.'s Mem. Opp. Ex. D; *see also* Buck Dep. at 82–84, 87–100.) Under these facts, there is simply no evidentiary basis upon which a reasonable jury could conclude that BUNAC was Drummond's employer.

#### 4. CUTPA Claim

 Count six of Doe's complaint sets forth a claim under CUTPA. This claim, however, is barred by the applicable statute of limitations. Pursuant to the applicable statute of limitations, [a]n action under CUTPA "may not be brought more than three years after the occurrence of a violation in this chapter." Conn.Gen.Stat. § 42–110g(f). Here, BUNAC's alleged CUTPA violations took place in February of 1987, more than three years after Doe filed his initial complaint, in August of 1990. It is

difficult, if not impossible, moreover, to accept Doe's contention that BUNAC's assisting Drummond with transportation and visa in 1988 and 1989 constituted continuing violations of CUTPA that tolled the statute of limitations within the requisite three year period. *See Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209–213, 541 A.2d 472 (1988) (date of act or omission complained of denotes start of three year period of limitations under CUTPA and finding of continuing course of conduct that tolls statute of limitations must be predicated on a breach of duty that remained in existence after commission of original wrong and not prior to the commencement of the period allowed for bringing action).

▬ The court notes, moreover, that even if Doe's CUTPA claim could survive an attack predicated on the applicable statute of limitations, BUNAC is still entitled to summary judgment on the substantive merits of that claim. Assuming that BUNAC's conduct constitutes a prohibited method, act, or practice under CUTPA, an assumption that the court does not subscribe to, it does not follow that Doe's loss of money was the result of BUNAC's "deceptive" trade practices. As the court stated in its previous discussion of the negligence claims against BUNAC, the record fails to support Doe's central claim that BUNAC's conduct was a proximate cause of John Doe's injuries or that BUNAC owed Doe a legal duty. Doe, therefore, cannot establish that BUNAC's alleged "deceptive trade practice" produced the ascertainable loss or injury required to prevail on a CUTPA claim. Accordingly, BUNAC is entitled to summary judgment on the CUTPA claim as well as the negligence counts.

### B. *The Boy Scouts*

▬ In support of their motion for summary judgment, the Boy Scouts incorporate virtually all of the arguments put forth by the BUNAC defendants. In turn, Doe objects on similar grounds as those set forth in its opposition to the BUNAC defendants' motion. Doe, however, also opposes the Boy Scouts' motion as untimely. Specifically, Doe contends that because the Boy Scouts failed to comply with the court's filing deadline for summary judgment submissions and ignored the court's order that all motions must be filed by October 15, 1991, the motion should be summarily denied on all counts regardless of the merits. The court agrees.

The Boy Scouts' failure to file its motion in a timely manner is particularly egregious. On September 5, 1991, the court conducted a pretrial conference (the "pretrial") in which counsel for all parties were present. At the pretrial, the court advised the parties that it was extending the deadline for the filing of all pretrial motions to October 15, 1991 in light of the fact that the court granted Doe leave to file an amended complaint at that time. Pursuant to the pretrial, the court issued an order on September 11, 1991 that all motions were to be filed on or before October 15, 1991. (*See* Filing No. 44.) Despite the presence of all counsel at the pretrial and the court's order, the Boy Scouts waited until November 7, 1991 to file their motion for summary judgment.

In their reply memorandum, the Boy Scouts contend that they relied upon the court's standing order on scheduling issued when Doe filed its original complaint on August 9, 1990. (*See* Filing No. 3.) Specifically, the Boy Scouts point to Subsection 2(d) which states in relevant part: "all motions shall be filed within seven (7) months after filing of the complaint ..." (*Id.*) The Boy Scouts argue that because Doe's amended complaint was filed on August 27, they had seven months from August 27, 1991 to file their motion, and, thus, the November 7, 1991 filing of the motion is in compliance with the court's scheduling order.

The court finds the Boy Scouts' rationalization disturbing for several reasons. First, counsel for the Boy Scouts was present at the pretrial in which the court expressly notified the parties pursuant to a written order that the deadline for the filing of motions was modified to October 15, 1991. Despite the fact that counsel was

expressly aware of the modified filing deadline pursuant to a court order, the Boy Scouts filed their motion more than three weeks late. The suggestion, therefore, that the disavowing of the court's express notification and order concerning the filing deadline was predicated on counsel's reliance on a scheduling order issued more than a year before the pretrial is mystifying at best.

Second, notwithstanding the fact that the court expressly modified the filing deadline at the pretrial, the Boy Scouts' filing would still be untimely under the original deadline set forth in Subsection 2(d). Subsection 2(d) requires that a summary judgment motion be filed within seven months of the filing of the complaint. The seven month time period, however, is always triggered by the filing of the original complaint, the point at which the court issues its standing pretrial scheduling order, and cannot be tolled again simply by the plaintiff's filing of amended complaints. Here, Doe filed its original complaint on August 9, 1990. The Boy Scouts filed their motion on November 7, 1991 more than a full year after the complaint was filed. Thus, the Boy Scouts' reliance on Subsection 2(d) provide absolutely no basis upon which the November 7, 1991 filing of a summary judgment motion could be justified as timely.

Finally, the Boy Scouts argue that even if the motion was not in compliance with the court's pretrial deadlines, the timing of the motion did not unduly prejudice Doe because the claims in the motion "are substantially the same as those made by … BUNAC in its Summary Judgment Motion." (Def. Boy Scouts' Rep. to Pltf.'s Opp. at 2.) The court disagrees.

The Boy Scouts stand in a fundamentally different position than BUNAC in this litigation. The LRC entered into an employment contract with Drummond, supervised his work at the Camp, and evaluated his performance. Unlike BUNAC which merely screened Drummond and acted as his

placement agency in 1987, it is undisputed that LRC employed Drummond as a counselor at the time Drummond allegedly molested John Doe. As Drummond's employer, the claims of negligent supervision, negligent hiring, and *respondeat superior* against the Boy Scouts are predicated on the existence of LRC's relationship with Drummond and Doe, a relationship that differs significantly from the relationship between BUNAC and Drummond. This employment relationship between the LRC and Drummond raises factual and legal issues concerning the Boy Scouts' liability, issues that are not present in the case against the BUNAC defendants.[3] The court, therefore, finds unpersuasive the claim that the BUNAC defendants' and the Boy Scouts' motions are predicated on grounds substantially similar to render the untimely filing of the motion unprejudicial in this case.

### Conclusion

For the reasons stated, the BUNAC defendants' motion for summary judgment is granted on all counts and the Boy Scouts' motion for summary judgment is denied on all counts.

SO ORDERED.

---

**3.** The court notes the Boy Scouts' failure to address Doe's claims in light of their role as Drummond's employer. Nor do the Boy Scouts address the relationship between BSA and LRC and whether those entities are distinct for purposes of liability in this action or whether they should be treated as one. Thus, had the court considered the merits of the Boy Scouts' motion in light of the arguments set forth in their legal memoranda, there is little likelihood that the Boy Scouts would have met the legal burden required for summary judgment in this case.