******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN DOE *v*. THE BOY SCOUTS OF AMERICA
CORPORATION ET AL.
(SC 19516)

Rogers, C. J., and Zarella, Eveleigh, McDonald, Espinosa, Robinson and
Sheldon, Js.*

*Argued April 1—officially released October 11, 2016*

*Wesley W. Horton,* with whom were *Brendon P. Levesque* and *Philip T. Newbury, Jr.,* for the appellant (named defendant).

*Paul A. Slager,* with whom was *Jennifer B. Goldstein,* for the appellee (plaintiff).

*Erin K. Olson, Margaret A. Garvin* and *Brian D. Kent* filed a brief for the National Center for Victims of Crime et al. as amici curiae.

*Opinion*

ROGERS, C. J. The primary issue that we must resolve in this appeal is whether the trial court should have instructed the jury that the defendant, The Boy Scouts of America Corporation,[1] could not be held responsible for the sexual abuse of the plaintiff, John Doe,[2] by a fellow member of the Boy Scouts unless the plaintiff proved that the defendant's own conduct increased the risk that the plaintiff would be subjected to such abuse. The plaintiff brought this action against the defendant claiming that, while he was a member of a Boy Scout troop during the mid-1970s, he was sexually abused during scouting activities by his Boy Scout patrol leader, Siegfried Hepp. The plaintiff alleged that the defendant negligently had failed to take adequate precautions to prevent Hepp's sexual abuse of the plaintiff. In addition, the plaintiff alleged negligent infliction of emotional distress, recklessness and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. After a trial, the jury returned a verdict in favor of the plaintiff on all claims. The trial court ultimately rendered judgment in accordance with the verdict, and this appeal followed.[3] The defendant claims on appeal that: (1) the trial court improperly denied its request to charge the jury that the defendant could not be held liable for negligence unless the plaintiff proved that the defendant's conduct created or increased the risk that the plaintiff would be harmed by Hepp; (2) the defendant had no duty to protect the plaintiff from Hepp's criminal or intentional misconduct because it did nothing to increase the risk of harm to the plaintiff and the harm was not foreseeable; (3) the plaintiff presented insufficient evidence to support a finding that the defendant's conduct had caused the plaintiff's damages; (4) the plaintiff presented insufficient evidence to support a finding that the defendant had been reckless; (5) the trial court incorrectly determined that the statute of limitations set forth in General Statutes § 52-577d rather than that set forth in General Statutes § 52-584 applied to the plaintiff's negligence and recklessness claims; (6) the trial court incorrectly determined that the statute of limitations set forth in § 52-577d rather than that set forth in General Statutes § 42-110g (f) applied to the plaintiff's CUTPA claim; and (7) the damages award was excessive. We agree with the defendant's first claim and, therefore, conclude that the judgment must be reversed and the case must be remanded for a new trial at which the jury may be properly instructed on the defendant's negligence claim. We further agree with the defendant's sixth claim that the trial court improperly determined that § 52-577d applies to the plaintiff's CUTPA claim. We reject the defendant's second through fifth claims, however, and we need not reach his seventh claim because we are remanding the case for a new trial.

The record reveals the following facts that the jury reasonably could have found and the procedural history. The defendant is a nonprofit organization chartered by Congress in 1910. The defendant issues charters to local volunteer groups, known as local councils, which are incorporated as charitable organizations in the states in which they are located. In turn, the local councils issue charters to local community organizations, such as churches, schools or service clubs, that want to establish a Boy Scout troop. The chartered local organization then forms a troop committee for the purpose of providing oversight to the local troop, including choosing the troop's adult leaders.

From the 1920s through the mid-1970s, the defendant maintained in a central location files containing the names of persons who were ineligible to volunteer as members of the local chartered organization or as troop leaders because they had been the subjects of allegations of sexual misconduct (ineligible volunteer files).[4] When an ineligible volunteer file was created, the volunteer's registration was revoked and he was barred from participating in the Boy Scouts in the future. Most of the ineligible volunteer files involved allegations against adults, but a number of files were created for minors under the age of eighteen.

Although the defendant maintained the ineligible volunteer files in its offices, information regarding a volunteer's alleged misconduct was ordinarily shared with the local council, and the ineligible volunteer was notified by letter when a file was created. The files were confidential, however, and were not made available to the general public.

The plaintiff, who was born in June, 1964, was a member of a Boy Scout troop in New Fairfield during the mid-1970s. The troop had thirty-five to forty members and was subdivided into patrols of five to seven members. Hepp, who was born in 1961, was the plaintiff's patrol leader. Hepp sexually abused the plaintiff on three separate occasions. On the first two occasions, Hepp and the plaintiff were at a Boy Scout camp. Hepp asked the plaintiff if he wanted to go fishing and then, when they were alone in the woods, Hepp showed the plaintiff pornography and performed oral sex on him. On the third occasion, Hepp and the plaintiff were at a Boy Scout jamboree. Hepp came into the plaintiff's tent at the end of the day, told the plaintiff to take his pants off and then performed anal sex on him.

In 2012, the plaintiff brought this action alleging that he had suffered physical, emotional and psychological injuries as the result of the sexual assaults by Hepp, and that the defendant was liable for his damages because it had negligently failed to take adequate steps to prevent his injuries. In addition, the plaintiff alleged that the defendant had negligently inflicted emotional distress,

that its conduct was reckless and that its conduct constituted a CUTPA violation. The defendant claimed by way of special defenses that the plaintiff's negligence and recklessness claims were barred by § 52-584 or, in the alternative, by General Statutes § 52-577, that Hepp's intentional criminal acts were intervening causes that superseded any negligence by the defendant, that the plaintiff failed to mitigate his damages, and that the CUTPA claim was barred by § 42-110g (f).

The defendant subsequently filed a motion for summary judgment claiming, among other things, that it was entitled to judgment as a matter of law because it owed no duty of care to the plaintiff under the circumstances of this case, that the plaintiff had failed to establish a prima facie case with respect to its recklessness and CUTPA claims, and that the CUTPA claim was barred by the statute of limitations. The trial court denied the defendant's motion.

At trial, the plaintiff's theory was that the defendant had been negligent because, even though it had been aware of numerous incidents of sexual abuse during scouting activities in the decades preceding the 1970s, both by adult and by minor Boy Scout participants, it failed to take precautions against sexual abuse by: (1) providing education or training to local councils about the risk of sexual abuse; (2) distributing information or training to Boy Scout members or their parents regarding the risk of sexual abuse; and (3) creating other barriers to minimize the risk of sexual abuse. In support of these claims, the plaintiff presented evidence in the form of expert testimony by Michael Kalinowski, an associate professor of family studies and human development at the University of New Hampshire and a former member of the New Hampshire Task Force on Sexual Abuse Prevention, with special expertise in the subject of institutional responsibilities for keeping children safe. Kalinowski testified that, in his opinion, the defendant's failure to inform the public about the risk of sexual abuse during Boy Scout activities created a dangerous situation for members of the Boy Scouts and was negligent. In addition, Gary Schoener, a clinical psychologist with expertise in assisting institutions to set up programs to prevent sexual abuse in institutional settings, testified that, on the basis of his review of the ineligible volunteer files, it was his opinion that the defendant must have been aware before the mid-1970s of incidents of sexual abuse of members of the Boy Scouts by fellow members. The plaintiff also entered into evidence three Scout Handbooks, published in 1972, 1975 and 1976 under the auspices of, and copyrighted by, the defendant. The Scout Handbooks generally promoted camping as a central activity of the Boy Scouts and stated that some patrols may choose to go on overnight camping trips by themselves, led only by a patrol leader and with no adult supervision.[5]

At the conclusion of the plaintiff's case, the defendant filed a motion for a directed verdict in which it contended, among other things, that the plaintiff's negligence and recklessness claims were barred by § 52-584 or § 52-577, that the defendant had no duty to protect the plaintiff, that the plaintiff had failed to prove that the defendant caused his damages, and that the CUTPA claim was barred by the statute of limitations. The trial court denied the motion.

At the conclusion of the presentation of evidence, the defendant submitted a request to charge the jury that contained the following proposed instruction: "The plaintiff claims that . . . Hepp engaged in intentional misconduct with him. As a general matter, the [defendant is] not responsible for anticipating the intentional misconduct of a third party, in this case Hepp, unless [it] knew or had reason to know of Hepp's propensity for misconduct from 1976 to 1978."

In addition, the defendant requested the following instruction: "The first exception to the rule that the [defendant is] not responsible for anticipating the intentional misconduct of Hepp unless [it] knew or should have known of his propensity for misconduct is when the [defendant's] own conduct created or increased the foreseeable risk that the plaintiff would be harmed by the misconduct of a third party.

"In order to answer that question, you should consider all of the following factors: the known character, past conduct, and tendencies of Hepp; the temptation or opportunity which the [defendant's] conduct may afford [Hepp] for such behavior; the gravity of the harm which may result; and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the [defendant] would be required to take. Where the risk is relatively slight in comparison with the utility of the [defendant's] conduct, [it] may have no obligation to act." The trial court declined to give either of the instructions that the defendant requested but, instead, gave a standard negligence instruction.[6]

The jury returned a verdict for the plaintiff on all counts and awarded $4 million in compensatory damages on the plaintiff's negligence claim, $3 million in compensatory damages on the claim of negligent infliction of emotional distress, and $10 in damages on the CUTPA claim. In addition to these damages, the trial court awarded punitive damages measured by attorney's fees in the amount of $2,792,541.95 and litigation costs in the amount of $59,558.50 on the recklessness claim, offer of compromise interest on that claim in the amount of $616,053.68, and offer of compromise interest on the negligence and negligent infliction of emotional distress claims in the amount of

$1,386,001.98, for a total damages award of $11,854,166.11.

After the jury verdict, the defendant filed a motion to set aside the verdict and order a new trial or remittitur pursuant to Practice Book § 16-35. The defendant contended, among other things, that it had no duty to protect the plaintiff under the circumstances of the case, that the plaintiff had failed to prove that the defendant caused his damages, that the plaintiff had failed to prove that the defendant was reckless, and that the trial court improperly had given a general negligence instruction to the jury. The defendant further contended that the $7 million compensatory damages award was excessive and requested a remittitur or, in the event that the plaintiff did not accept a remittitur, a new trial.

The defendant also filed a motion to set aside the verdict and to render judgment notwithstanding the verdict pursuant to Practice Book § 16-37. In that motion, the defendant repeated its contentions that it had no duty to protect the plaintiff and that the plaintiff had failed to prove causation, recklessness or a CUTPA violation. In addition, the defendant contended that the plaintiff's negligence, negligent infliction of emotional distress and recklessness claims were barred either by § 52-584 or, in the alternative, by § 52-577, and that the CUTPA claim was barred by § 42-110g (f). The trial court denied both motions and rendered judgment for the plaintiff in accordance with the verdict. This appeal followed.[7]

I

We first address the defendant's claim that the trial court improperly denied its request to instruct the jury that the defendant could not be held liable for negligence unless the plaintiff proved that the defendant's conduct created or increased the risk that the plaintiff would be harmed by Hepp. We agree.

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Devalda*,

306 Conn. 494, 505–506, 50 A.3d 882 (2012).

The following legal principles govern the defendant's instructional claim in the present case. In *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 176, 72 A.3d 929 (2013), this court recognized that, under the provision of the Restatement (Second) of Torts captioned, "Risk of Intentional or Criminal Conduct," "[a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." (Internal quotation marks omitted.) 2 Restatement (Second), Torts § 302 B (1965). We further observed that, "as a general matter, a defendant is not responsible for anticipating the intentional misconduct of a third party . . . unless the defendant knows or has reason to know of the third party's criminal propensity." (Citation omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 172.

This court also recognized in *Doe*, however, that there are exceptions to this general rule. "More specifically, one of the comments to § 302 B of the Restatement (Second) . . . explains that '[t]here are . . . situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where . . . the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.' Id., § 302 B, comment (e), p. 90. One situation in which the actor will be required to guard against the intentional misconduct of another is '[w]here the actor acts with knowledge of peculiar conditions which create a high degree of risk of [such] intentional misconduct.' Id., § 302 B, comment (e), example (H), p. 93." (Footnote omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 178–79. For purposes of this exception, "[t]he actor's conduct may be negligent solely because he should have recognized that it would expose [another] person . . . to an unreasonable risk of criminal aggression. If so, it necessarily follows that the fact that the harm is done by such criminal aggression cannot relieve the actor from liability . . . . [Moreover], it is not necessary that the conduct should be negligent solely because of its tendency to afford an opportunity for a third person to commit the crime. It is enough that the actor should have realized the likelihood that his conduct would create a temptation which would be likely to lead to its commission.[8] . . . *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611–12 n.20, 662 A.2d 753 (1995), quoting 2 Restatement (Second), supra, § 448, comment (c), p. 482." (Citation omitted; footnote added; internal quotation marks omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 176–77.

As this court recognized in *Doe*, "[i]t is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence . . . it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. Where the risk is relatively slight in comparison with the utility of the actor's conduct, he may be under no obligation to protect the other against it. [2 Restatement (Second), supra], § 302 B, comment (f), p. 93.

"Thus, for purposes of this exception, the issue is twofold: (1) whether the defendant's conduct gave rise to a foreseeable risk that the injured party would be harmed by the intentional misconduct of a third party; and (2) if so, whether, in light of that risk, the defendant failed to take appropriate precautions for the injured party's protection." (Internal quotation marks omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 179–80.

In the present case, the defendant's proposed jury instruction mirrored and accurately stated these principles and was clearly relevant to the plaintiff's claim that the defendant could be held liable for negligence because, as we held in *Doe*, the defendant could be held directly liable for injuries caused by Hepp's intentional misconduct only if the defendant's conduct had increased the risk to the plaintiff that he would be subjected to sexual abuse by a fellow member of the Boy Scouts. Accordingly, we conclude that the trial court improperly denied the requested charge. *State* v. *Devalda*, supra, 306 Conn. 506 ("a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored" [internal quotation marks omitted]).

In support of his claim to the contrary, the plaintiff first contends that the trial court's jury instruction on the elements of negligence was proper because it was substantively identical to the jury instruction that the trial court gave in *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 167–68, which this court approved on appeal. We disagree. In *Doe*, the plaintiff, Tim Doe #1 (Doe),[9] had been sexually abused by George E. Reardon, a physician, while Reardon was engaged in a purported child growth study under the auspices and on the premises of the defendant, Saint Francis Hospital and Medical Center (hospital), which

was Reardon's employer. Id., 149–50. Doe brought an action against the hospital claiming, among other things, that "the hospital committed corporate negligence in that the hospital allowed Reardon to conduct a [child] growth study without establishing protocols, rules or guidelines and violated its own rules by failing to properly monitor and supervise Reardon in connection with the growth study so as to prevent injury to the minor subjects of the study . . . ." (Internal quotation marks omitted.) Id., 156–57. At trial, the hospital requested that the trial court instruct the jury that, to prevail on his claim, Doe "must prove that [the hospital] had either actual or constructive notice that . . . Reardon had a propensity to sexually abuse children before [Doe] was abused by [him]." (Internal quotation marks omitted.) Id., 166. The trial court denied the request and gave a standard negligence instruction. Id., 166–67. The jury returned a verdict for Doe and the hospital appealed to this court claiming that the trial court improperly had denied its requested jury instruction. Id., 154.

A majority of this court concluded in *Doe* that the instruction requested by the hospital was not an accurate statement of the law, because, as we previously have explained in this opinion, a third party's propensity to engage in misconduct is not the *only* evidence that can establish the foreseeability of that misconduct. Accordingly, we concluded in *Doe* that the failure to give the instruction was not improper. Id., 196–98. Indeed, we concluded that *giving* the instruction would have been improper because it "would have prevented [Doe] from establishing the foreseeability of Reardon's sexual misconduct on the basis of the other evidence of foreseeability on which [Doe] had asked the jury to rely . . . ." Id., 190–92. We further observed in *Doe* that, as far as it went, the instruction that the trial court gave the jury was a correct statement of the law. Id., 192 n.38. Accordingly, we rejected the hospital's claim. Id., 196–98.

In the present case, the plaintiff contends that, as in *Doe*, the trial court's instruction was a correct statement of the law as far as it went and, therefore, the court properly denied the defendant's request to charge. Unlike in *Doe*, however, the defendant in the present case requested an instruction that was an *accurate* statement of the law and that would not have prevented the plaintiff from establishing the foreseeability of Hepp's misconduct on the basis of evidence other than Hepp's personal propensity to engage in sexual abuse. In fact, the defendant requested a statement of the law that this court explicitly adopted in *Doe*. Accordingly, the present case is distinguishable from *Doe* because the defendant requested an accurate statement of the law that was relevant to the issues in the case. We conclude, therefore, that the trial court improperly denied the defendant's request to instruct the jury that

the defendant could not be held liable for negligence unless the plaintiff proved that the defendant's conduct created or increased the risk that the plaintiff would be harmed by Hepp.[10]

At oral argument before this court, the plaintiff further contended that the jury instructions that the defendant requested would have been misleading because several of the factors that the defendant referred to are not present here. Specifically, the plaintiff contended that, because he made no claim that the defendant was on notice that "the known character, past conduct, and tendencies of *Hepp* [or] the temptation or opportunity which the defendant's conduct may afford *him* for such behavior"; (emphasis added); created an increased risk of harm to the plaintiff, those factors were irrelevant. Again, we are not persuaded. This court held in *Doe* that the known propensities of the individual who engaged in intentional misconduct is a factor that the jury properly may consider when determining whether a defendant negligently failed to take precautions against the misconduct. *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 179 ("[f]actors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm" [internal quotation marks omitted]).[11] The factor does not become irrelevant merely because it favors the defendant. Accordingly, we reject this claim.

II

We next address the defendant's contention that the trial court improperly rejected its claim that it had no duty to protect the plaintiff from Hepp's intentional misconduct because the defendant did nothing to increase the risk of harm to the plaintiff and the harm was not reasonably foreseeable. We disagree.

Although the defendant frames this claim as involving a question about the existence of a legal duty, it concedes that it would have had a duty to protect the plaintiff if Hepp's misconduct had been foreseeable under the factors for determining the foreseeability of intentional misconduct of a third party set forth in *Doe*. See id., 179–80. Thus, the essence of the defendant's claim is that the plaintiff failed to present sufficient evidence in support of those factors. Accordingly, we focus our analysis on the question of whether the plaintiff established a prima facie case of negligence under *Doe*.[12] This is a question of law subject to plenary review. *Winn* v. *Posades*, 281 Conn. 50, 55, 913 A.2d 407 (2007) ("[w]hether the plaintiff has established a prima facie case entitling the plaintiff to submit a claim to a trier of fact is a question of law over which our review is plenary" [internal quotation marks omitted]).

The defendant first contends that the plaintiff was required to present evidence that the defendant's *affirmative acts* increased the risk of harm to the plaintiff,

and that evidence of a *failure to act* is not sufficient. See *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 179 (actor is required to guard against intentional misconduct of other when "the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct" [internal quotation marks omitted]). The defendant contends that the plaintiff presented no evidence of any such affirmative acts by the defendant. The plaintiff contends that, to the contrary, there was evidence that the defendant engaged in affirmative acts that increased the risk of harm and, even if there were no such evidence, omissions may form the basis of a negligence claim. *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 205, 746 A.2d 730 (2000) ("wrongful conduct may include acts of omission as well as affirmative acts of misconduct" [internal quotation marks omitted]).

We agree with the plaintiff. The plaintiff presented evidence that the defendant engaged in the affirmative acts of promoting and endorsing Boy Scout activities, such as overnight camping, that created opportunities for sexual abuse. In addition, the plaintiff presented evidence that the defendant knew of numerous instances of sexual abuse during such activities. We conclude that this evidence was sufficient to establish a prima facie case that the defendant "should have realized the likelihood that [its] conduct would create a temptation which would be likely to lead to [sexual abuse]." (Internal quotation marks omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 176–77; see *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 338, 87 A.3d 546 (2014) ("the determination as to whether a particular risk is unreasonable is to be left to the jury when reasonable minds could reach different conclusions").

We also note that the same set of facts may support both a claim of negligent affirmative acts and a claim of negligent omissions, and the choice of how to plead a case is up to the plaintiff. For example, the plaintiff in the present case could have claimed either that: (1) by engaging in the affirmative act of promoting certain activities, despite its knowledge that those activities increased the risk that participants would be subject to sexual abuse, the defendant negligently created an unreasonable risk of harm to the plaintiff; or (2) having created an unreasonable risk that participants in certain activities would be subject to sexual abuse, the defendant was required to take affirmative steps to guard against the risk—such as educating the participants about the risk—and negligently failed to do so. Cf. *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 179 (actor who acts with knowledge of conditions that increase risk of intentional misconduct is "required to take precautions against intentional or criminal misconduct" [internal quotation marks omitted]). Accordingly, we do not agree with the defendant that omissions

cannot provide the basis for a negligence claim under *Doe* as a matter of law.[13]

The defendant next claims that the plaintiff failed to present evidence of "peculiar conditions" because "[t]here was nothing peculiar about any of the [s]couting activities discussed in this case." See id. ("[o]ne situation in which the actor will be required to guard against the intentional misconduct of another is [w]here the actor acts with knowledge of peculiar conditions which create a high degree of risk of [such] intentional misconduct" [internal quotation marks omitted]). We disagree. In this context, "peculiar" simply means that the distinctive characteristics of the conditions created an unreasonable risk of intentional misconduct by a third party.[14] There is no requirement that the conditions be "peculiar" in the sense that they are odd or strange. There also is no requirement that the "peculiar conditions" constitute a departure from ordinary conditions.[15] Accordingly, we conclude that a jury reasonably could find that the opportunity for a group of minors, who are either unsupervised or can easily evade supervision, to spend extended periods of time together in remote and secluded places constitutes a "peculiar condition" under *Doe*.

The defendant next claims that the plaintiff failed to establish a prima facie case that there was a "high degree of risk" of sexual misconduct during scouting activities; see *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 179; because "[t]here was no evidence at trial that the risk of molestation in the Boy Scouts was any higher than it was in the general public."[16] Accordingly, it contends, "if sexual abuse is found to be reasonably foreseeable in [s]couting, then it was reasonably foreseeable everywhere. That cannot be the law." We disagree. Opportunities for groups of minors, who are either unsupervised or can easily evade supervision, to spend extended periods of time together in remote and secluded places are not "everywhere." Even if the percentage of participants in the Boy Scouts who were sexual predators was no greater than the percentage of sexual predators in the general population, a jury reasonably could find that these activities provided participants with a greater opportunity to engage in sexual abuse. A jury also could reasonably infer that this increased opportunity would, in fact, attract a disproportionate number of individuals with sexually predatory inclinations.[17] Accordingly, although the plaintiff did not present evidence of the precise mathematical degree of the risk of sexual misconduct created by such activities, a jury reasonably could infer that promoting such activities increased the risk to an unreasonable degree and that the defendant knew or should have known of the increased risk. Of course, the defendant is free to present countervailing evidence and to argue to the jury on remand that there was no increased risk, that, if there was an increased risk, it

did not know and had no reason to know of the increased risk, or that any increase in risk was not unreasonable in light of the social utility of the activities.

To the extent that the defendant contends that it should be categorically exempt from liability for negligent conduct that increases the risk of intentional misconduct by others *as a matter of law* because the benefits that its activities and programs provide to boys and adolescents outweigh any risks, we disagree. The jury not only is required to weigh the benefits of Boy Scout activities against any risks when determining whether the defendant was negligent, it must also consider the extent to which taking precautions, such as educating participants about the risks of participation, would burden the defendant. See *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 179–80 (jury must consider "the burden of the precautions which the actor would be required to take" [internal quotation marks omitted]). Even if we were to agree with the defendant that the benefits of participating in Boy Scout activities outweigh the risks as a matter of law and, therefore, the defendant was not required to stop promoting such activities—a question that we need not decide here—we do not agree that a reasonable person would be compelled to conclude that taking precautions against the risks would have been so unduly burdensome that the defendant reasonably could not have been expected to do so.[18] Because this is a question on which reasonable people may disagree, it is a question for the jury. See id., 180 (whether defendant may be held liable for conduct that increases risk of intentional misconduct by third party "is fact intensive, and its resolution will depend on the nature and gravity of the risk posed by the potential misconduct of the third party" and other factors set forth in § 302 B, comment (f) of the Restatement [Second], supra, which include utility of actor's conduct and extent to which taking precautions would burden actor). Accordingly, we conclude that, under the factors set forth in *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 179–80, the plaintiff has established a prima facie case that the defendant's conduct created an unreasonable risk that participants in the Boy Scouts, like the plaintiff, would be subject to sexual abuse.

### III

We next address the defendant's claim that the plaintiff did not present sufficient evidence to support a finding that the defendant's conduct caused the plaintiff's personal injuries. Specifically, the defendant contends that, "[s]ince there is no evidence that the rate of sexual abuse in [s]couting is any higher than elsewhere in society, there is no reason to suppose that, had the [defendant] said something on the subject, the plaintiff's parents or the [local council] would have

taken any action to prevent the abuse." We concluded in part II of this opinion, however, that the plaintiff has made out a prima facie case that the defendant's negligent conduct increased the risk that the plaintiff would be subject to sexual abuse and that the defendant negligently failed to take precautions against this risk. Under *Doe,* this is sufficient to establish causation. See *Doe* v. *Saint Francis Hospital & Medical Center,* supra, 209 Conn. 176 ("[t]he actor's conduct may be negligent solely because he should have recognized that it would expose [another] person . . . to an unreasonable risk of criminal aggression" [internal quotation marks omitted]). Accordingly, we reject this claim.

### IV

We next address the defendant's claim that the plaintiff failed to establish a prima facie case that the defendant's conduct was reckless. We disagree.

"Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. . . . More recently, we have described recklessness as a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.,* 317 Conn. 357, 382, 119 A.3d 462 (2015).

In the present case, the plaintiff presented evidence that would support a finding that the defendant was aware of numerous instances of sexual abuse of participants in the Boy Scouts during Boy Scout activities in the years preceding Hepp's sexual abuse of the plaintiff. The plaintiff also presented evidence that there were precautions that the defendant reasonably could have taken to prevent such sexual abuse, and that it failed to do so. On the basis of this evidence, reasonable minds could disagree as to whether the risk of sexual abuse was sufficiently great such that the defendant either knew or should have have known that its failure to take those precautions would expose Boy Scout participants to a great risk of harm. Accordingly, we conclude that the issue is one for the jury. See *Vendrella* v. *Astriab Family Ltd. Partnership,* supra, 311 Conn. 338 (issue

should be presented to jury when reasonable minds could reach different conclusions).

V

We next address the defendant's claim that the trial court improperly determined that the plaintiff's negligence and recklessness claims are not barred by § 52-584. Specifically, the defendant contends that, contrary to the trial court's conclusion that the statute of limitations set forth in § 52-577d applies to the plaintiff's claims, § 52-577d applies only to *intentional* torts, i.e., to claims against the perpetrator of a sexual assault on a minor, while § 52-584 continues to apply to claims against parties whose negligent conduct is alleged to have caused injury to the plaintiff when he was a minor. We disagree.

Resolution of this issue requires us to construe the relevant statutes and our review is, therefore, plenary. *Lombard* v. *Edward J. Peters, Jr., P.C.*, 79 Conn. App. 290, 294, 830 A.2d 346 (2003). "In making such determinations, we are guided by fundamental principles of statutory construction." *In re Matthew F.*, 297 Conn. 673, 688, 4 A.3d 248 (2010); see General Statutes § 1-2z.[19] "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008). "When a statute is not plain and unambiguous, we [may] look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Lieberman* v. *Aronow*, 319 Conn. 748, 757, 127 A.3d 970 (2015).

We begin our analysis with the language of the relevant statutes. Section 52-577d provides: "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than thirty years from the date such person attains the age of majority." Section 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Section 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered . . . ."

The defendant contends that, because § 52-577d expressly provides that § 52-577, which applies to intentional torts, does not apply to claims involving personal injury to a minor caused by sexual abuse, and § 52-577d

makes no mention of § 52-584, which applies to claims of personal injury arising from negligence or recklessness, claims that fall within § 52-584 are not subject to § 52-577d.[20] The all-encompassing language of § 52-577d providing that "*no action* to recover damages for personal injury to a minor . . . caused by sexual abuse"; (emphasis added); however, supports an interpretation that negligence and recklessness claims would also be subject to the thirty year statute of limitations. See *Almonte* v. *New York Medical College*, 851 F. Supp. 34, 37 (D. Conn. 1994) ("the unambiguous language of [§ 52-577d] indicates that the statutory focus is on actions flowing from a particular type of harm"). Accordingly, we conclude that the reference to § 52-577 in § 52-577d does not compel the interpretation urged by the defendant but, instead, merely creates ambiguity as to whether the legislature intended § 52-577d to apply to claims that would otherwise be subject to § 52-584. See *Doe* v. *Indian Mountain School, Inc.*, 921 F. Supp. 82, 83 (D. Conn. 1995) ("[t]he introductory clause of § 52-577d, by referring to . . . § 52-577 without referring to . . . § 52-584, tends to create some ambiguity concerning the statute's scope"). Taking into consideration the statute's language, its legislative history, the circumstances surrounding its enactment, the legislative policy it was designed to implement and the legislature's acquiescence to the application of § 52-577d to negligence claims for more than twenty years, we are persuaded for the following reasons that the legislature intended for § 52-577d to apply to claims that otherwise would be subject to § 52-584.

With respect to the statutory language, § 52-577d plainly is not concerned with *particular types of defendants*, but with providing a recovery for a *particular type of injury*, namely, "personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault . . . ." See *Almonte* v. *New York Medical College*, supra, 851 F. Supp. 37 (§ 52-577d "does not expressly limit its application to offenders; rather, reference to the unambiguous language of the statute indicates that the statutory focus is on actions flowing from a particular type of harm, and not parties" [emphasis omitted]). If the legislature had intended to limit the application of § 52-577d to claims against perpetrators, and to subject negligence claims against other persons or entities whose conduct also legally caused such an injury to the twenty-eight year shorter statute of limitations contained in § 52-584, it could have simply said so.[21] See *Doe* v. *Indian Mountain School, Inc.*, supra, 921 F. Supp. 84 ("If the legislature wanted to preclude application of the extended limitations period to all the types of claims enumerated in § 52-584, notwithstanding its objective of providing meaningful remedies to minor victims of sexual abuse, it probably would have said so explicitly, as it has in establishing other statutes of limitations.

See [General Statutes § 52-576 (c) ('[t]he provisions of this section [relating to actions for an account or on any simple or implied contract] shall not apply . . . to any cause of action governed by article 2 of title 42a'); General Statutes § 52-581 (b) ('[t]his section [relating to actions on oral contracts] shall not apply to causes of action governed by article 2 of title 42a'].").

In addition to the absence of any language in § 52-577d limiting its application to actions against perpetrators, § 52-577d specifically applies to tort claims for emotional distress which, under our common law, includes claims for both intentional *and* negligent conduct. Thus, the specific inclusion of a claim that is not limited to intentional conduct also strongly suggests that the legislature intended to include negligence claims within the scope of § 52-577d.

The legislative history of § 52-577d and the overall legislative policy that the statute was designed to implement also support the conclusion that it was intended to apply to negligence claims involving the sexual assault of minors. One of the proponents of the legislation that was codified as § 52-577d[22] stated during the legislative debate that juvenile victims of sexual abuse frequently have little control over their own lives and, therefore, cannot bring an action for damages while they are still juveniles, especially when the person who is responsible for the sexual abuse is also the person who has control over the child. See 29 H.R. Proc., Pt. 12, 1986 Sess., p. 4388, remarks of Representative Richard Tulisano. The purpose of § 52-577d was to afford a person who was a juvenile victim of sexual abuse to "[gain] some control" after he or she reaches the age of majority and "to seek some sense of satisfaction and some sense of being able to say [he or she has] been made whole through their own actions . . . ." Id., remarks of Representative Tulisano; see also *Roberts* v. *Caton*, 224 Conn. 483, 493, 619 A.2d 844 (1993) ("one object of § 52-577d is to afford a plaintiff sufficient time to recall and come to terms with traumatic childhood events before he or she must take action"). Moreover, during the debates on the 2002 amendment to § 52-577d; see footnote 22 of this opinion; Representative Michael Lawlor stated broadly that the statute "applies to claims or causes of action [arising] from" sexual abuse of a minor. 45 H.R. Proc., Pt. 13, 2002 Sess., p. 3955. In addition, at the hearings before the Judiciary Committee, Helen Meganigle, the chairperson of the Victims Rights Committee of the Connecticut Bar Association, referred to the sexual abuse scandal in the Catholic Church, and that church's responsibility for failing to take steps to prevent the abuse, when she urged the legislature to extend the statute of limitations. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 2002 Sess., p. 1772 ("[w]hen the Catholic Church [failed to take steps to address the problem of sexual abuse by clergy], [it] committed a gross error of judg-

ment and now something has to be done to address the issue"). A conclusion that § 52-577d does not apply to claims involving negligent conduct would be totally inconsistent with this legislative intent to afford an opportunity for minor victims of sexual assaults caused by such institutional negligence to be made whole.[23] We simply can perceive no legitimate reason why the legislature would have wanted to exempt persons or entities whose negligent conduct legally caused a plaintiff's injuries from also being held liable for their misconduct.

Finally, over the last twenty-two years, there have been numerous decisions in Connecticut courts holding that negligence claims against nonperpetrators were subject to the extended statute of limitations contained in § 52-577d.[24] During that time, the legislature has amended that statute to extend the limitations period to thirty years from the date that the plaintiff reaches the age of majority. See footnote 22 of this opinion. Despite the existence of numerous high profile cases involving claims of personal injury caused by sexual abuse against nonperpetrators, however; see, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 172, 884 A.2d 981 (2005) (case involved "twenty-three lawsuits [in which nonperpetrator was named defendant] alleging sexual abuse of minors by clergymen employed by the Bridgeport Roman Catholic Diocesan Corporation," all of which had been brought in the mid-1990s); and despite numerous trial court decisions that have held that § 52-577d applies to negligence claims; see footnote 24 of this opinion; the legislature did not amend § 52-577d to limit its application to claims against perpetrators. Thus, we may presume that the legislature acquiesces in this interpretation of the statute. See *State* v. *Salamon*, 287 Conn. 509, 525, 949 A.2d 1092 (2008) ("[l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute" subsequent to judicial interpretation [internal quotation marks omitted]).

In light of this strong evidence of the legislature's intent that § 52-577d should be applied to *all* actions "to recover damages for personal injury to a minor . . . caused by sexual abuse," not just to claims against perpetrators, we cannot agree with the defendant that the legislature's use of the phrase "[n]otwithstanding the provisions of section 52-577" was intended to limit the application of the statute exclusively to perpetrators. Rather, we are convinced that, when the legislature enacted § 52-577d, it intended for the statute to apply to actions sounding in negligence and recklessness and to carve out such actions from the scope of § 52-584. Accordingly, we conclude that the trial court properly determined that § 52-577d applies not only to actions against the perpetrators of sexual abuse of minors, but also to actions against parties whose negligent acts or omissions legally caused the personal injuries suffered

by the victims of such abuse.[25]

## VI

Finally, we address the defendant's claim that the trial court improperly determined that the limitations period set forth in § 52-577d, rather than that set forth in § 42-110g (f), applied to the plaintiff's CUTPA claim. We agree and conclude, therefore, that the defendant is entitled to summary judgment on the CUTPA count.

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." (Internal quotation marks omitted.) *Watts* v. *Chittenden*, 301 Conn. 575, 582, 22 A.3d 1214 (2011).

This court has not previously considered whether § 42-110g (f) applies to a CUTPA claim when the underlying claim involves conduct that also gives rise to a distinct form of remedy that is subject to another statute of limitations. The Appellate Court has addressed that question, however, and has concluded that "[§] 42-110g (f) applies to all claims brought under CUTPA without regard to the nature of the underlying unfair trade practice that has been alleged." *Bellemare* v. *Wachovia Mortgage Corp.*, 94 Conn. App. 593, 606–607, 894 A.2d 335 (2006) (rejecting plaintiff's claim that § 42-110g [f] did not apply to CUTPA claim arising from violation of provision of General Statutes § 49-8 [c] authorizing claim for damages for failure to issue timely release of satisfied mortgage), aff'd, 284 Conn. 193, 931 A.2d 916 (2007).

We agree with the defendant that the Appellate Court's holding in *Bellemare* is correct and that it is applicable in the present case. The plaintiff has raised two distinct claims arising from the same set of alleged facts, namely a common-law tort claim alleging that he was personally injured by sexual abuse when he was a minor as the result of the defendant's negligence, and a statutory CUTPA claim pursuant to § 42-110g.[26] Accordingly, there simply is no conflict between §§ 52-577d and 42-110g (f). Rather, § 52-577d applies to the plaintiff's tort claims and § 42-110g (f) applies to his CUTPA claim, in accordance with the intent of the legislature. Indeed, the plaintiff has cited no authority in support of his claim that a statutory CUTPA action may be subject to different statutes of limitations depending on the underlying nature of the alleged unfair trade practice. In light of this conclusion, we need not address the defendant's claim that applying § 52-577d to the CUTPA claim would deprive the defendant of its due process rights under the state and federal constitutions.

In support of his claim to the contrary, the plaintiff relies on the "well established principle of statutory interpretation that requires courts to apply the more specific statute relating to a particular subject matter in favor of the more general statute that otherwise might

apply in the absence of the specific statute." *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 301–302, 21 A.3d 759 (2011). This principle comes into play, however, only when two statutes of limitations apply to the *same claim* and, therefore, both statutes cannot be given full effect. For example, although the express terms of § 52-584, considered in isolation, would apply to negligence actions for personal injury caused by sexual abuse, because § 52-577d applies specifically to such actions, and because both statutes obviously cannot apply to the same claim, we have concluded that § 52-577d trumps § 52-584. As we have explained, however, § 52-577d and § 42-110g (f) do not conflict because they apply to separate and distinct claims and, therefore, we are not required to choose between them. Accordingly, we reject the plaintiff's claim.

The judgment is reversed and the case is remanded with direction to grant the defendant's motion for summary judgment on the CUTPA count and to render partial judgment thereon for the defendant, and for a new trial on the remaining counts of the complaint in accordance with this opinion.

In this opinion SHELDON, J., concurred, and ZARELLA, ESPINOSA and ROBINSON, Js., concurred in parts I and VI of the opinion and with the disposition of reversal of the judgment and remand for a new trial.

* This appeal was originally scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justices Eveleigh and Espinosa were not present when the case was argued before the court, they have read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Judge Sheldon was added to the panel and has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

[1] Hereinafter, we occasionally refer to the defendant and its subsidiary local organizations and operations collectively as the Boy Scouts when appropriate for the context.

The original complaint named The Boys Scouts of America Corporation, Fairfield County Council of Boy Scouts of America, Inc. (Fairfield County Council), and Connecticut Yankee Council, Inc. (Connecticut Yankee Council), as defendants. Fairfield County Council was merged with Connecticut Yankee Council in 1998, and was not a separate party at trial. The jury returned a verdict in favor of Connecticut Yankee Council and that entity is not a party to this appeal. For purposes of clarity, references herein to the defendant are to The Boy Scouts of America Corporation only.

[2] The trial court granted permission to the plaintiff to use a pseudonym for purposes of bringing his action against the defendant pursuant to Practice Book § 11-20A (h) (2). We decline to identify the plaintiff in accordance with our policy of protecting the privacy interests of victims of sexual abuse. See General Statutes § 54-86e.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[4] Although it appears that the defendant still maintains ineligible volunteer files, its current practices are not at issue in this appeal.

[5] The Scout Handbooks provided: "Patrols do lots of things outdoors. They go hiking and camping. These hikes and camps must be approved by your [s]coutmaster ahead of time.

"Some patrols go overnight camping by themselves. Your patrol can, too, if you have a patrol leader your [s]coutmaster will approve as an overnight

camping leader."

[6] The trial court instructed the jury that "[c]ommon-law negligence is the failure to use reasonable care under the circumstances. Reasonable care is the care that a reasonably prudent person would use in the same circumstances.

"In determining the care that a reasonably prudent person would use in the same circumstances, you should consider all the circumstances which were known or should have been known to the defendant at the time of the conduct in question.

"Whether care is reasonable depends upon the dangers that a reasonable person would perceive in those circumstances. It is common sense that the more dangerous the circumstances, the greater the care that ought to be exercised.

"A duty to use care exists when a reasonable person, knowing what the [defendant] here either knew or should have known at the time of the alleged conduct, would foresee that the harm of the same general nature as that which occurred here was likely to result from that conduct. If harm of the same general nature as that which occurred here was foreseeable, it does not matter if the manner in which the harm that actually occurred was unusual, bizarre or unforeseeable."

[7] After the defendant filed its appeal, we granted permission to file a joint amicus curiae brief in support of the plaintiff's position to the National Center for Victims of Crime, the National Crime Victim Law Institute and the Survivors Network of Those Abused by Priests.

[8] In other words, conduct is not necessarily negligent simply because it affords an opportunity for another to commit a crime. If the actor should have realized that his conduct would create a significant temptation to commit the crime, however, the actor may be found negligent.

[9] The plaintiff in *Doe* used a pseudonym. See *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 150 n.1.

[10] In his concurring and dissenting opinion, Justice Eveleigh contends that any impropriety in the jury charge was harmless because the plaintiff presented evidence to support each of the *Doe* factors, because the court's jury instruction on negligence "encompasse[d] the substance of" the plaintiff's proposed charge, and because the court's instruction on superseding cause was "substantially similar" to the defendant's proposed charge. We disagree. The defendant requested a jury instruction on *duty*, i.e., that "the [defendant is] not responsible for anticipating the intentional misconduct . . . unless [it] knew or had reason to know of Hepp's propensity for misconduct," which is not the same as an instruction on *causation*, i.e., that "the defendant did not legally cause the injury *even though* [*its*] *negligence was a substantial factor in bringing the injury about*." (Emphasis added.) In other words, the defendant did not concede that it was negligent and then contend that its negligence did not cause the plaintiff's injury; rather, it claimed that, because there was no evidence that its own conduct created or increased the risk that the plaintiff would be subject to sexual abuse, it had no duty to take steps to prevent such abuse and, therefore, it was not negligent. Accordingly, the instruction given by the trial court was not substantially similar to the instruction that the defendant requested. Because the jury was not instructed that it must find that the defendant's conduct created or increased the risk that the plaintiff would be sexually abused, we simply cannot know whether the jury made that essential finding. We conclude, therefore, that the improper jury instruction cannot be considered harmless.

[11] We do not suggest that the known propensity of the specific individual defendant to engage in misconduct is the *sole* factor that the jury may consider in determining whether a defendant may be held liable for another's intentional misconduct. Rather, as we recognized in *Doe*, "the actor as a reasonable man is required to know the habits and propensities *of human beings* and to anticipate the customary or normal acts of others." (Emphasis added; internal quotation marks omitted.) *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 180 n.27. In this context, "customary or normal acts" include acts that may be tortious or criminal. See 2 Restatement (Second), supra, § 290, comment (m), pp. 52–53 ("A reasonable man is a standardized human being living in an actual world and not in Utopia. The actor, as a reasonable man, must therefore take life as it is and not as it should be, and must realize the likelihood that third persons may act in a variety of ways . . . which are not only morally but legally wrongful."). Moreover, if a defendant knew or reasonably should have known that a specific activity attracts a subset of human beings with particular propensi-

ties, the jury may consider that factor when determining whether a particular harm is a foreseeable result of the activity. See id., § 290, comment (k), p. 51 ("[t]he actor as a reasonable man should also know the peculiar habits, traits, and tendencies which are known to be characteristic of certain well-defined classes of human beings").

[12] When the trial court has improperly instructed the jury and the improper instruction cannot be considered harmless because there is no way of knowing whether the finder of fact would have reached the same conclusion if it had been properly instructed, the proper remedy generally is to remand the case to the trial court for a new trial without considering whether the evidence presented at the first trial was sufficient to support the verdict. Cf. *McDermott* v. *State*, 316 Conn. 601, 611, 113 A.3d 419 (2015) ("[w]e have often stated that, a party is generally entitled to a new trial when, on appeal, a different legal standard is determined to be required, unless we conclude that, based on the evidence, a new trial would be pointless"); *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 127, 43 A.3d 759 (2012) ("[w]hen an incorrect legal standard is applied, the appropriate remedy is to reverse the judgment of the trial court and to remand the matter for further proceedings"). Arguably, however, that principle applies only when the proper legal standard was not clear at the time of the original trial or when we have changed the legal standard on appeal. See *McDermott* v. *State*, supra, 611 (case is remanded for new trial when "any insufficiency in proof was caused by the subsequent change in the law . . . [and] not the [party's] failure to muster evidence" [internal quotation marks omitted]); but see *Deroy* v. *Estate of Baron*, supra, 130 (case remanded for new trial when trial court failed to apply established legal standard). Accordingly, under the circumstances of the present case, in which the plaintiff arguably was on notice that *Doe* provided the proper standard, in fairness to the defendant, and out of an abundance of caution, we conclude that we should address the defendant's sufficiency of the evidence claims.

[13] See *Juarez* v. *Boy Scouts of America, Inc.*, 81 Cal. App. 4th 377, 412, 97 Cal. Rptr. 2d 12 (2000) (evidence that defendant, Boy Scouts of America, Inc., had "failed to take reasonable steps to see that the information in the [Youth Protection Program] was likely to be communicated to the scouts, parents, or adult leaders of" its constituent troops supported negligence claim).

[14] See Webster's New World Dictionary of the American Language (2d College Ed. 1972) (defining "peculiar" as adjective as: "1. of only one person, thing, group, country, etc.; distinctive; exclusive 2. particular; unique; special [a matter of *peculiar* interest] 3. out of the ordinary; queer; odd; strange" [emphasis in original]).

[15] The Restatement (Second) provides the following illustration of a "peculiar [condition] which create[s] a high degree of risk of intentional misconduct": "The employees of the A Railroad are on strike. They or their sympathizers have torn up tracks, misplaced switches, and otherwise attempted to wreck trains. A fails to guard its switches, and runs a train, which is derailed by an unguarded switch intentionally thrown by strikers for the purpose of wrecking the train. B, a passenger on the train, and C, a traveler upon an adjacent highway, are injured by the wreck. A Company may be found to be negligent toward B and C." 2 Restatement (Second), supra, § 302 B, comment (e), example (H), illustration (15), p. 93. We see no reason why the result would be different if the A Railroad's train lines were continually plagued by train wreckers.

[16] We note that, in this context, "high degree of risk" does not mean a high probability of harm, but merely means that intentional misconduct by a third party is a foreseeable result of the defendant's conduct, which is a question for the jury when reasonable persons could disagree. See *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 311 Conn. 338 (injury is foreseeable when there is unreasonable risk that injury will occur and "the determination as to whether a particular risk is unreasonable is to be left to the jury when reasonable minds could reach different conclusions"); *Doe* v. *Saint Francis Hospital & Medical Center*, supra, 309 Conn. 177–78 ("although a defendant is shielded from liability for the intentional misconduct of a third party outside the scope of the risk created by the defendant's conduct, even [t]ortious or criminal acts may . . . be foreseeable, and so within the scope of the created risk" [internal quotation marks omitted]).

[17] See *Juarez* v. *Boy Scouts of America, Inc.*, 81 Cal. App. 4th 377, 403, 97 Cal. Rptr. 2d 12 (2000) ("[t]he [Boy Scouts of America, Inc.,] acknowledge[s], as [it] must, the possibility exists that pedophiles will be attracted to scouting to gain legitimate access to young boys in order to seduce the

more susceptible ones into sexual activity"). We see no reason why this possibility would be limited to adult volunteers and would not be equally true of older members of the Boy Scouts who have a propensity to sexually abuse younger members.

[18] See *Juarez* v. *Boy Scouts of America, Inc.*, 81 Cal. App. 4th 377, 409, 97 Cal. Rptr. 2d 12 (2000) (as matter of law, court "soundly reject[ed] any contention that the [Boy Scouts of America, Inc.] could avoid all legal responsibility to incorporate into their program information designed to prevent a significant risk of harm to the youths it serves on the ground that any burden imposed would be too onerous").

[19] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[20] This court previously has held that "[t]he [three year] limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section." *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 491, 234 A.2d 825 (1967). Because intentional torts are not subject to § 52-584 or to any other statute of limitations, they are subject to § 52-577. *Watts* v. *Chittenden*, 301 Conn. 575, 582–83, 22 A.3d 1214 (2011). Conversely, because claims of personal injury arising from negligent or reckless conduct are subject to § 52-584, they are not subject to § 52-577.

[21] Indeed, almost all of the courts that have concluded that an extended statute of limitations for claims involving childhood sexual abuse does not apply to claims against nonperpetrators have been confronted with statutes that expressly limit their application to claims against perpetrators. See, e.g., *Walker* v. *Barrett*, 650 F.3d 1198, 1209 (8th Cir. 2011) (Texas statute of limitations for "[a]ny action to recover damages from injury or illness caused by childhood sexual abuse" was limited to claims against perpetrator when statute defined "childhood sexual abuse" as "any act *committed by the defendant*" that constituted one of several enumerated criminal sex offenses [emphasis added]); *Debbie Reynolds Professional Rehearsal Studios* v. *Superior Court*, 25 Cal. App. 4th 222, 231, 30 Cal. Rptr. 2d 514 (1994) (statute of limitations for "any act *committed by a defendant* against a plaintiff . . . and which act would have been proscribed" by one of enumerated criminal statutes was limited to claims against perpetrator [emphasis added]); *Kelly* v. *Marcantonio*, 678 A.2d 873, 875–76 (R.I. 1996) (statute of limitations for "[a]ll claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse" was limited to claims against perpetrators when statute defined "childhood sexual abuse" as "any act committed *by the defendant* against a complainant" [emphasis added]); *Bernie* v. *Blue Cloud Abbey*, 821 N.W.2d 224, 227 (S.D. 2012) (statute of limitations for "[a]ny civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse" was limited to claims against perpetrators when statute defined "childhood sexual abuse" as any act committed "*by the defendant* against the complainant . . . [and] which act would have constituted a felony" [emphasis in original]); but see *Knaus* v. *Great Crossings Baptist Church, Inc.*, Docket No. 2009-CA-000141-MR, 2010 WL 476046, *2 (Ky. App. 2010) (unpublished decision) (statute of limitations for "[a]ction relating to childhood sexual abuse or childhood sexual assault" was limited to claims against perpetrators), review denied (Ky. October 13, 2010). In contrast, the absence of language expressly limiting a statute of limitations' application to claims against perpetrators has been found to support the interpretation that the statute applies to nonperpetrators. *Stephanie M.* v. *Coptic Orthodox Patriarchate Diocese of Southern United States*, 362 S.W.3d 656, 659 (Tex. App. 2011) (extended statute of limitations applied to claims against nonperpetrators when there was "no language restricting [the] particular limitations statute to certain types of [personal injury] claims," such as intentional tort), review denied (Tex. September 30, 2011); *Sabia* v. *State*, 164 Vt. 293, 309, 669 A.2d 1187 (1995) (extended statute of limitations applied to claims against nonperpetrators when there was "nothing in the statutory language suggesting that the [l]egislature intended to exclude [nonperpetrators] from the reach of the statute"); see also *Werre* v. *David*, 275 Mont. 376, 383, 913 P.2d 625 (1996) (statute of limitations that applied to "[a]n action based on intentional conduct brought by a person for recovery of damages for injury

suffered as a result of childhood sexual abuse" was not limited to claims against perpetrators); *Lourim* v. *Swensen*, 328 Or. 380, 390, 977 P.2d 1157 (1999) ("[a]n action for vicarious liability that alleges that an employee committed child abuse is an 'action based on conduct that constitutes child abuse' under a plain, natural, and ordinary meaning of that phrase"); *C.J.C.* v. *Corp. of the Catholic Bishop of Yakima*, 138 Wn. 2d 699, 709, 985 P.2d 262 (1999) (same).

We further note that, when a statute of limitations applies to actions that are "based on" intentional conduct by the perpetrator, or uses language to that effect, most courts have concluded that the statute applies to nonperpetrators. See *Werre* v. *David*, supra, 275 Mont. 383 (statute of limitations that applied to "[a]n action based on intentional conduct brought by a person for recovery of damages for injury suffered as a result of childhood sexual abuse" was not limited to claims against perpetrators); *Lourim* v. *Swensen*, supra, 328 Or. 390 ("[a]n action for vicarious liability that alleges that an employee committed child abuse is an 'action based on conduct that constitutes child abuse' under a plain, natural, and ordinary meaning of that phrase"); *C.J.C.* v. *Corp. of the Catholic Bishop of Yakima*, supra, 138 Wn. 2d 709 (same); but see *Knaus* v. *Great Crossings Baptist Church, Inc.*, supra, 2010 WL 476046, *2 (statute of limitations for "[a]ction relating to childhood sexual abuse or childhood sexual assault" was limited to claims against perpetrator). A fortiori, the language of § 52-577d referring to an "action to recover damages for personal injury to a minor . . . . caused by sexual abuse" clearly evinces a legislative intent that the limitation applies to *all* such actions.

[22] Number 86-401 of the 1986 Public Acts, § 6, codified as General Statutes (Rev. to 1987) § 52-577d, provides: "Notwithstanding the provisions of section 52-577 of the general statutes, no action to recover damages for the personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person no later than two years from the date such person attains the age of majority, except that no such action may be brought more than seven years from the date of the act complained of." The statute was amended in 1986 to delete the second occurrence of the word "no." Public Acts 1986, No. 86-403, § 104. In 1991, the statute was amended by changing the limit for recovery from two years from the date the plaintiff attains the age of majority to seventeen years from the date the plaintiff attains the age of majority and to delete the exception providing that no action may be brought within seven years from the date of the act complained of. Public Acts 1991, No. 91-240. In 2002, the statute was amended to increase the limitations period from seventeen years from the date that the plaintiff reaches the age of majority to thirty years. Public Acts 2002, No. 02-138, § 2.

[23] See *Sabia* v. *State*, 164 Vt. 293, 309, 669 A.2d 1187 (1995) ("[w]e decline to read the term 'against the perpetrator' into a remedial statute whose purpose is to benefit victims of childhood sexual abuse, not to punish the perpetrators of the abuse").

[24] See *Almonte* v. *New York Medical College*, supra, 851 F. Supp. 34; see also *Doe* v. *Darien Board of Education*, Docket No. 3:11CV1581 (JBA), 2013 WL 2047872, *4 (D. Conn. May 14, 2013) (§ 52-577d applies to negligence claims against nonperpetrators); *Doe* v. *Indian Mountain School, Inc.*, supra, 921 F. Supp. 83–84 (same); *Nutt* v. *Norwich Roman Catholic Diocese*, 921 F. Supp. 66, 72 (D. Conn. 1995) (same); *Todd M.* v. *Richard L.*, 44 Conn. Supp. 527, 537, 696 A.2d 1063 (1995); *Doe* v. *Flanigan*, Superior Court, judicial district of Waterbury, Docket No. CV-09-5015462-S (January 9, 2015) (59 Conn. L. Rptr. 586); *Doe No. 2* v. *Norwich Roman Catholic Diocesan Corp.*, Superior Court, judicial district of Hartford, Docket No. X-07-HHD-CV-125036425-S (December 2, 2013) (57 Conn. L. Rptr. 342); *Doe* v. *Kennedy*, Superior Court, judicial district of Waterbury, Docket No. CV-09-5013921-S (November 29, 2012) (55 Conn. L. Rptr. 193); *Truex* v. *Rogers*, Superior Court, judicial district of Hartford, Docket No. CV-04-0833129-S (May 10, 2006) (41 Conn. L. Rptr. 330); *Doe* v. *Burns*, Superior Court, judicial district of Middlesex, Docket No. CV-03-0100215-S (July 19, 2005) (39 Conn. L. Rptr. 815); *Lawson* v. *Lawson*, Superior Court, judicial district of Litchfield, Docket No. CV-99-0080780-S (January 23, 2001) (29 Conn. L. Rptr. 264); *Doe* v. *Boy Scouts of America*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-94-0141153-S, 1999 WL 61473, *2 (January 29, 1999); *Moen* v. *Baransky*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-96-0054578-S (October 10, 1996) 20 Conn. L. Rptr. 501; *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, Superior Court, judicial district of Middletown, Docket No. CV-9369529 (June 27, 1996) (17 Conn. L. Rptr.

267); *Milhomme* v. *Levola*, Superior Court, judicial district of Windham, Docket No. CV-94-0048326-S (July 14, 1995) (14 Conn. L. Rptr. 517); *Coburn* v. *Ordner*, Superior Court, judicial district of Fairfield, Docket No. CV-93-0306715-S (March 22, 1995) (14 Conn. L. Rptr. 9); *See* v. *Bridgeport Roman Catholic Diocesan Corp.*, Superior Court, judicial district of Fairfield, Docket No. CV-93-0300948-S (September 13, 1993) (10 Conn. L. Rptr. 51); but see *Doe* v. *Indian Mountain School, Inc.*, supra, 83–84 (noting that court in *Ashlaw* v. *Booth*, Superior Court, judicial district of Windham, Docket No. CV-90-0045313-S [August 9, 1995] [unpublished opinion], held that § 52-584, not § 52-577d, applied to negligence action against nonperpetrator defendant because § 52-577d referred to § 52-577 and did not refer to § 52-584).

[25] In support of his conclusion that § 52-584 applies to the plaintiff's claim, Justice Zarella contends in his concurring and dissenting opinion that § 52-577d carves out only an exception to § 52-577, which applies to intentional torts. As Justice Zarella acknowledges, however, § 52-577 does not *expressly* apply to intentional torts; rather, as we have explained, it is a catchall provision for torts that are not expressly mentioned in other statutes. See footnote 20 of this opinion. It applies, for example, to legal malpractice actions. *Weiner* v. *Clinton*, 106 Conn. App. 379, 386, 942 A.2d 469 (2008) ("[a]ctions for legal malpractice based on negligence are subject to § 52-577, the tort statute of limitations"). Thus, when the legislature enacted § 52-577d, it is reasonable to conclude that it referred to § 52-577 not because that is the statute of limitations for intentional torts, but because it is the catchall statute of limitations.

[26] An "action to recover damages for personal injury to a minor . . . caused by sexual abuse"; General Statutes § 52-577d; is clearly a common-law tort action. Indeed, if there were any doubt on this point, the legislature's use of the phrase "[n]otwithstanding the provisions of section 52-577"—which applies to tort actions—in § 52-577d makes this conclusion inescapably clear. Our research has revealed no decision of this court or the Appellate Court holding that a plaintiff may seek damages for personal injury under CUTPA. See *Simms* v. *Candela*, 45 Conn. Supp. 267, 275, 711 A.2d 778 (1998) (noting that no appellate case law directly addressed issue, but concluding that claim for damages for personal injury may be brought under CUTPA).